1

2

3   O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  FEDERAL DEPOSIT INSURANCE     )   Case No. CV 12-03448 DDP (CWx)
    COMPANY AS RECEIVER FOR       )
12  FIRST BANK OF BEVERLY HILLS,  )   **ORDER DENYING MOTIONS TO DISMISS**
                                  )
13                     Plaintiff, )   [Dkt. Nos. 31, 33, 35, & 37]
                                  )
14       v.                       )
                                  )
15  LARRY B. FAIGIN, CRAIG        )
    KOLASINSKI, ERIC ROSA,        )
16  ANNETTE VECCHIO, HOWARD       )
    AMSTER, WILLIAM D. KING,      )
17  STEPHEN GLENNON, ROBERT       )
    KANNER, KATHLEEN KELLOGG AND  )
18  JOHN LANNAN,                  )
                                  )
19                     Defendants.)
                                  )
20  _____)

21       Presently before the court are Motions to Dismiss by

22  Defendants Howard Amster, William D. King, Stephen Glennon, Robert

23  Kanner, and Kathleen Kellogg (collectively "Director Defendants");

24  Annette Vecchio, Craig Kolasinski, and Eric Rosa (collectively

25  "Officer Defendants"); John Lannan, who also joins the Outside

26  Director's Motion as to the Second and Third Claims for Relief; and

27  Larry B. Faigin, who joins the Director Defendants' Motion and the

28  Officer Defendants' Motion.  Having considered the parties's

submissions and heard oral argument, the court adopts the following

order.

**I. Background**

The Federal Deposit Insurance Company ("FDIC") as Receiver for

the First Bank of Beverly Hills ("FBBH") is asserting claims

against Defendants in an amount no less than $100.6 million for

losses incurred on nine "acquisition, development, and

construction" and "commercial real estate" loans. (Compl. ¶¶ 1,

11.)  Defendants are former directors and officers of FBBH.

Kolasinski, Rosa, and Vecchio were officers.  Amster, King,

Glennon, Kanner, Kellogg, and Lannan were directors.  Faigin was

director, officer, and Chief Executive Officer.

FBBH opened as Girard Savings and Loan Association in 1979.

In 1997, it became a stock savings bank regulated by the Office of

Thrift Supervision and changed its name to First Bank of Beverly

Hills.  In 2005, FBBH became a state chartered commercial bank

regulated by the California Department of Financial Institutions,

and the FDIC became FBBH's primary regulator. (Id. ¶ 12.)  At that

time, the Bank was operating out of branches in Beverly Hills and

in Calabasas. (Id. ¶ 13.)  FBBH originally focused on making loans

of $5 million or less secured by stable income-producing

properties.  In 2006 the Board began to move into acquisition,

development, and construction loans and into commercial real estate

loans. (Id. ¶ 15.)  Those types of loans were riskier, but no

measures were taken to improve underwriting or strengthen FBBH's

capital position. (Id. ¶ 16.)  At the same time, quarterly

dividend payments were being approved to FBBH's parent company

Beverly Hills Banccorp. (Id. ¶ 17.)  On April 24, 2009, the

California Department of Financial Institutions closed FBBH and appointed the FDIC as receiver.  (<u>Id.</u>  ¶ 18.)

This action concerns nine loans made in 2006 and 2007. The FDIC alleges that all nine loans were deficient for ignoring discrepancies in financial evaluations and in analyses of project financials and appraisals, excessive LTV ratios, and prohibited reliance on due diligence of participant banks.  (<u>Id.</u> ¶ 54.)  Some of the alleged deficiencies in these loans are the following:

With respect to the Monteverde/Hawkbyrn loan: Relying on outdated financials and an outdated appraisal, ignoring a loan to value ratio of 100% and severe flood control issues, and entering into the participation when the loan was set to mature one month after approval without questioning why the loan was not being paid off at maturity.  (<u>Id.</u> ¶¶ 61, 63, 66.)

With respect to the Otay loan: Ignoring that the guarantor's financials were inflated and that the loan transaction was a "flip" that permitted the principals of the borrower to sell the property back to themselves at a price higher than the actual value, thereby using the proceeds of the loan to make a quick profit and taking equity out of the project before it was completed. (<u>Id.</u> ¶¶ 68, 69.)

With respect to the Schaeffer loan: Approving a loan on a nursing home, which was specifically prohibited by the Loan Policy, and relying on guarantors' net worth as a source of repayment although that net worth was over $5 million less than the Bank's portion of the Loan.  (<u>Id.</u> ¶¶ 75, 76.)

With respect to the Vineyard South loan: Failing to address the fact that the housing project was being built right on top of the San Andreas Fault. (<u>Id.</u> ¶¶ 86, 88.)

1    With respect to the River East loan: Approving refinancing of

2  $25.4 million in senior debt with no primary repayment source of

3  the loan, and failing to clarify parking rights, which would

4  significantly affect the value of the property.  (Id. ¶¶ 92, 96.)

5    With respect to the AHCB loan: After requiring $10 million in

6  hard purchase contracts prior to funding, ignoring the very

7  condition they themselves implemented to mitigate risky pre-

8  approving funding of $3.8 million of the loan prior to the receipt

9  of any executed purchase contracts.  (Id. ¶ 101.)

10    With respect to the Las Vegas 215 loan: Approving the loan

11  based upon an allegedly imminent, but ultimately non-existent

12  "verbal agreement" for sale.  (Id. ¶ 110.)

13    With respect to the Las Vegas Mobil 18 loan: Approving the

14  loan based upon a hypothetical appraisal of the subject land only,

15  when the property was not vacant, but had a mobile home park

16  operating on the site, income from which was insufficient to

17  service the loan. (Id. ¶¶ 116, 117.)

18    With respect to the Acacia Investors loan: Failing to follow

19  up on the Phase I Site Assessment, which would have revealed severe

20  restrictions on development of the property due to the Endangered

21  Species Act, and failing to assess the impact on the project of the

22  owner having to build a necessary bridge and road. (Id. ¶¶ 130-

23  134.)

24    All Defendants have filed Motions to Dismiss.  All Defendants

25  contend that the action should be dismissed because the Complaint

26  depends on documents not attached to it, because it does not give

27  notice as to which Defendants are being sued for which acts as

28  Required by Federal Rule of Civil Procedure ("FRCP") 8, and because

4

1  FRCP 10 requires that each loan be pleaded as a separate count.
2  The Director Defendants also argue that they are protected from
3  claims of breach of fiduciary duty by the business judgment rule
4  and the exculpatory clause in their contract; that the FDIC has not
5  stated a claim for gross negligence; and that the third claim for
6  relief (for breach of fiduciary duty) is duplicative of the gross
7  negligence claim.   The Officer Defendants argue that they are also
8  protected by the business judgment rule from claims of breach of
9  fiduciary duty; that the FDIC has not stated a claim for gross
10 negligence; and that the breach of fiduciary duty claim is
11 duplicative of the simple negligence claim.   Defendant Faigin joins
12 the Motions of the both Director and Officer Defendants.   Defendant
13 Lannan joins the Director Defendants' Motion and also moves to
14 dismiss the negligence claim, arguing that he is protected by the
15 business judgment rule.

16 **II. Legal Standard**

17     A complaint will survive a motion to dismiss under Rule
18 12(b)(6) when it contains "sufficient factual matter, accepted as
19 true, to 'state a claim to relief that is plausible on its face.'"
20 <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009) (quoting <u>Bell Atl.</u>
21 <u>Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).   When considering a
22 Rule 12(b)(6) motion, a court must "accept as true all allegations
23 of material fact and must construe those facts in the light most
24 favorable to the plaintiff." <u>Resnick v. Hayes</u>, 213 F.3d 443, 447
25 (9th Cir. 2000).   Although a complaint need not include "detailed
26 factual allegations," it must offer "more than an unadorned,
27 the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at
28 678.   Conclusory allegations or allegations that are no more than a

statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679.  In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted.  Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 664. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555-56. "Determining whether a complaint states a plausible claim for relief" is a "context-specific" task, requiring "the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**III. Discussion**

**A. 2006 FDIC Report of Examination ("2006 ROE") and Bank Loan Policy**

The Director Defendants, joined by the Officer Defendants, assert that the FDIC's Complaint "hinges on its characterization and selective excerpting of two documents: the Bank's Loan Policy and the 2006 ROE." (Dir. Mot. at 7.)  They assert that FDIC agreed to provide the 2006 ROE "pursuant to an appropriate protective order but only on the condition that the Director Defendants not challenge the FDIC-R's withholding of the Loan Policy," a condition which was unacceptable to the Director Defendants.  (Dir. Mot. at 9 n.10.)  According to the Director Defendants, the 2006 ROE and Bank's Loan Policy are essential to the Complaint, and they ask the

court to dismiss the Complaint or strike the portions of the
Complaint that rely on those documents.  (Dir. Mot. at 10, Dir.
Reply at 2.)  Defendants move to dismiss the Complaint because it
depends on but does not attach the two documents.  Defendants do
not have access to the documents, and therefore cannot attach them
to their Motion.

        "Ordinarily, a motion to dismiss under Fed. R. Civ. P.
12(b)(6) is addressed to the four corners of the complaint without
consideration of other documents or facts outside of the
complaint."  Haskell v. Time, Inc., 857 F.Supp. 1392, 1396
(E.D.Cal. 1994).  "In ruling on a 12(b)(6) motion, a court may
generally consider only allegations contained in the pleadings,
exhibits attached to the complaint, and matters properly subject to
judicial notice. However, in order to prevent plaintiffs from
surviving a Rule 12(b)(6) motion by deliberately omitting documents
upon which their claims are based, a court may consider a writing
referenced in a complaint but not explicitly incorporated therein
if the complaint relies on the document and its authenticity is
unquestioned."  Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir.
2007)(internal quotation marks and citations omitted).

        The FDIC concedes that "written instruments may be considered
on a motion to dismiss when the allegations are essential to and
underlie the conduct at issue." (Opp. to Dir. Mot. at 26 n.8.)
However, the FDIC asserts that the issue of the action is not false
or misleading statements in the documents but the conduct of the
directors.  "The ROE only serves to corroborate the Director
Defendants' actionable conduct. Put another way, even if the ROE
did not exist, the acts of the Director Defendants, as alleged in

1   the complaint, would survive." (Opp. to Dir. Mot. at 27.)   The FDIC

2   also points out that the ROE was not written at the time of the

3   approval of seven of the nine loans, and that therefore it cannot

4   be the basis for Defendants' actionable conduct.  (Opp. to Dir.

5   Mot. at 27.)  Finally, the FDIC notes that the Complaint cites at

6   least 50 documents.  (Opp. to Dir. Mot. at 25.)

7       The court finds that although the Complaint frequently

8   references the 2006 ROE, the number of references alone does not

9   make that document essential to the Complaint.  The FDIC has

10  grounded its allegations in prima facie deficiencies in the loans

11  presented to the Director Defendants for approval.  Such

12  deficiencies may be corroborated by the 2006 ROE but do not derive

13  from it.  Therefore, the court must consider only the four corners

14  of the Complaint, and Defendants' lack of access to the documents

15  is not a basis on which to dismiss the Complaint or strike the

16  portions of the Complaint that refer to these documents.  The

17  references to the documents serve to corroborate Defendants'

18  actionable conduct.

19      **B. Rules 8 and 10**

20      All Defendants argue that the Complaint is deficient because

21  it does not give notice as to which defendants are being sued for

22  doing what as to which loans, as required by Federal Rule of Civil

23  Procedure 8.  It "gives little guidance as to the specific

24  negligent acts at issue" and "does not indicate which defendants

25  supposedly committed which allegedly negligent acts with respect to

26  which loans."  (Off. Mot. at 28.)

27      The FDIC responds that it "has pled specific facts as to each

28  individual Defendant and their participation in the management of

1  the Bank and the approval of each loan" and that "To the extent

2  that the Complaint does plead collectively, the pleadings refer to

3  instances where Defendants acted together, failed to take

4  appropriate action together . . ., voted together, approved

5  documents and loans together, and each was equally complicit."

6  (Opp. to Off. Mot. at 22-23.)

7      The court agrees with the FDIC.  The Complaint indicates the

8  dates that each defendant served as an officer or director.

9  (Compl. ¶¶ 20-29.)  It also indicates which loans were approved

10 during each Defendant's tenure and how each Defendant voted on the

11 loan. (Id. ¶ 57.)  The Complaint also explains the specific

12 deficiencies of each loan.  (Id. ¶¶ 60-138.)  The Complaint thus

13 sufficiently alleges with respect to each defendant "the basic

14 questions: who, did what, to whom (or with whom), where, and when."

15 Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1048 (9th Cir. 2008).

16     The cases cited by Defendants involved allegations with far

17 less specificity than the allegations of this Complaint.  In

18 Fennell v. Gregory, 414 F. App'x 32, 35 (9th Cir. 2011), in which

19 the plaintiff alleged First and Fourteenth Amendment violations by

20 various Attorneys General, the Ninth Circuit held that "Fennell's

21 Complaint lacks factual particularity regarding the personal

22 involvement and conduct of the individual Attorneys General."

23 Here, in contrast, there is sufficient factual particularity

24 regarding each Defendant and each allegedly deficient loan;

25 although the Complaint frequently pleads in the collective, that

26 collective is always defined and the action - approving the loan -

27 is always a genuinely collective action.  This is not a case where

28 the Complaint fails "to say which wrongs were committed by which

9

1   defendants." <u>McHenry v. Renne</u>, 84 F.3d 1172, 1179 (9th Cir. 1996).

2   The Complaint states the wrongs, many of which were collective, and

3   identifies which Defendants were involved in committing each wrong.

4   Defendants thus have sufficient notice of the allegations against

5   them.

6        The court also finds that Rule 10 does not require the FDIC to

7   plead each loan as a separate count.  Rule 10(b) states that "[i]f

8   doing so would promote clarity, each claim founded on a separate

9   transaction or occurrence - and each defense other than a denial -

10  must be stated in a separate count or defense."  Fed. R. Civ. P.

11  10(b).  Such a structure, here, would likely involve significant

12  repetition of the claims for relief making the Complaint unwieldy

13  without promoting clarity.

14       **C. Motion of Director Defendants**

15       The Complaint makes claims for relief against the Director

16  Defendants for gross negligence and breach of fiduciary duty.

17            **1. Business Judgment Rule**

18       Director Defendants argue that they are protected from claims

19  of breach of fiduciary duty by the business judgment rule.

20  "California Corporations Code § 309 codifies California's business

21  judgment rule.  The general purpose of the business judgment rule

22  is to afford directors broad discretion in making corporate

23  decisions and to allow these decisions to be made without judicial

24  second-guessing in hindsight." <u>FDIC v. Castetter</u>, 184 F.3d 1040,

25  1044 (9th Cir. 1999)(internal citations and quotation marks

26  omitted).[1]  "The California business judgment rule is intended to

27  ───────────────

28       [1] The relationship between the business judgment rule and §
                                              (continued...)

10

protect a director from liability for a mistake in business judgment which is made in good faith and in what he or she believes to be the best interest of the corporation, where no conflict of interest exists." <u>Id.</u> (internal citations and quotation marks omitted).  "The rule establishes a presumption that directors' decisions are based on sound business judgment, and it prohibits courts from interfering in business decisions made by the directors in good faith and in the absence of a conflict of interest." <u>Berg & Berg Enterprises, LLC v. Boyle</u>, 178 Cal.App.4th 1020, 1045.  The rule does not protect a director "where there is a conflict of interest, fraud, oppression, or corruption," nor does it protect "a director who has wholly abdicated his corporate responsibility, closing his or her eyes to corporate affairs." <u>Castetter</u>, 184 F.3d at 1046.

     The court finds that the FDIC has pleaded facts sufficient to overcome the business judgment rule.  First, the FDIC has stated a claim for the directors receiving improper personal benefits,

---

[1](...continued)
309 is somewhat complex.  While a plain reading of § 309 does suggest, as the FDIC argues, that a director may be held liable if the director does not meet a standard of reasonable care, <u>i.e.</u> is negligent, such a reading would mean that § 309 abolishes the business judgment rule by making a director always liable for negligence.  <u>See</u> 1 Harold Marsh, Jr., et al., <u>Marsh's California Corporation Law</u> 11-26-11-27 (4th Ed. 2012).  California courts appear to agree that § 309 codified rather than abolished the business judgment rule.  <u>See, e.g.</u>, <u>Gaillard v. Natomas Co.</u>, 208 Cal.App.3d 1250, 1264 (1989)(citations omitted)("Section 309 codifies California's business judgment rule.  Section 309 incorporates the concept of a director's immunity from liability for an honest mistake of business judgment with the concept of a director's obligation of reasonable diligence in the performance of his or her duties.") Thus, the business judgment rule applies when the director fails to meet a standard of reasonable care (<u>i.e.</u>, is negligent), but not "where there is a conflict of interest, fraud, oppression, or corruption" or where a director has "wholly abdicated his corporate responsibility."

1  which, if true, may deprive them of the protection of the business
2  judgment rule.

3      Additionally, the FDIC has stated a claim for the directors'
4  abdication of corporate responsibility.  Although § 309 allows
5  directors to "rely on information, opinions, reports or statements,
6  including financial statements and other financial data" provided
7  by certain authorized parties, this reliance is authorized only "so
8  long as, in any such case, the director acts in good faith, after
9  reasonable inquiry when the need therefor is indicated by the
10 circumstance and without knowledge that would cause such reliance
11 to be unwarranted."  Cal. Corp. Code § 309.

12     Here, the FDIC alleges that the directors approved loans so
13 facially deficient that they made reliance upon them unwarranted.
14 See, e.g., Compl. ¶ 61 ("The FBBH Credit Memo . . . showed that the
15 Approving Dependants relied on outdated corporate financials, which
16 were dated as of December 31, 2004, outdated financials of the
17 principal of the borrower, which were dated as of September 2005,
18 and an outdated 2004 appraisal."); ¶ 68 ("at the time of the CTB
19 deal, the Principals created a new entity to buy the land,
20 essentially from themselves, at a price higher than both the
21 appraisal's 'as is' value and prospective value for finished lots.
22 This fact, which was contained in the CTB Credit Memo given to the
23 Approving Defendants, and altered the Approving Defendants that the
24 Principals 'flipped' the property at an inflated sales price, was
25 not addressed by the Approving Defendants, and no further due
26 diligence on this issue was requested by the Approving Defendants
27 or conducted by FBBH underwriters."); and ¶ 85 ("The FBBH Credit
28 Memo, given to the Approving Defendants, stated that construction

was 60% complete but that 72% of the loan proceeds had been disbursed, while the CTB Due Diligence Synopsis of August 27, 2006, which Defendants received, described construction as 90% complete."). These allegations, taken as true, state a claim for abdication of corporate responsibility.

The court finds that the FDIC has pleaded facts sufficient to overcome the business judgment rule.

### 2. Exculpatory Clause

Defendants also argue that they are not liable for breach of fiduciary duty because FBBH's Articles of Incorporation contained an exculpatory clause, under which the "liability of the directors of the Corporation for monetary damages shall be eliminated to the fullest extent permissible under California law." (Request for Judicial Notice in Support of Dir. Mot., Exh. A, ("Exculpatory Clause").) However, under California law, such exculpatory clauses "may not eliminate or limit the liability of directors" in certain situations, most relevant here,

> (ii) for acts or omissions that a director believes to be contrary to the best interests of the corporation or its shareholders or that involve the absence of good faith on the part of the director,
>
> (iii) for any transaction from which a director derived an improper personal benefit,
>
> (iv) for acts or omissions that show a reckless disregard for the director's duty to the corporation or its shareholders in circumstances in which the director was aware, or should have been aware, in the ordinary course of performing a director's duties, of a risk of serious

1        injury to the corporation or its shareholders,

2        (v) for acts or omissions that constitute an unexcused

3        pattern of inattention that amounts to an abdication of

4        the director's duty to the corporation or its

5        shareholders.

6   Cal. Corp. Code § 204(a)(10).

7        The FDIC maintains that the Complaint alleges facts sufficient

8   to trigger the § 204 exceptions and render the Exculpatory Clause

9   invalid.

10       The Complaint alleges that Director Defendants received an

11  improper personal benefit in the Complaint in, for instance, ¶ 9

12  ("By approving the Loss Loans despite their myriad obvious

13  deficiencies, the Defendants lined their own pockets when FBBH

14  dividends, boosted by false profits on large problematic loans that

15  were unlikely to be repaid, were upstreamed to the Bank's parent

16  company -- of which numerous Defendants were shareholders."); ¶ 37

17  ("During the 2006 examination, Faigin informed examiners that he

18  would recommend that the Bank cease making cash dividend payments

19  to BHBC for 2007, a recommendation with which the examiners agreed.

20  In spite of this, the directors approved quarterly dividends

21  totally $9.6 million in 2007, which amounted to 563.38% of the

22  Bank's net operating income.  Several voting directors were large

23  shareholders in BHBC, collectively owning approximately 23% of

24  outstanding shares."); and ¶ 53 ("The CTB loans were part of a

25  $117.1 million package of eight loan participations with CTB that

26  Rosa, who was CTB's CCO at the time, had referred to Lannan.

27  Lannan voted to approve the purchase of the CTB loan

28  participations, despite the fact that he stood to benefit

14

personally from the approval of the loans.  In fact, Lannan received a $75,000 referral fee from the Bank for referring the participations to the Bank.  FBBH hired Rosa immediately after the Board approved the CTB participations.").

The court finds that the FDIC has stated a claim under (iii) with the allegations that the Directors approved loans from which they stood personally to benefit and were shareholders in companies that profited from the allegedly facially deficient loans.  The Director Defendants argue that none of these actions indicate improper personal benefit.  While that may ultimately turn out to be the case, the FDIC has stated a claim for such an improper benefit.  Whether that claim holds up is a question for the fact-finder.

The court also finds that the FDIC has alleged facts sufficient to trigger (iv) and (v).[2]  FDIC has pleaded facts amounting to "reckless disregard" under (iv) in allegations such as ¶ 2 ("Defendants recklessly implemented an unsustainable business model pursuing rapid asset growth concentrated in large high-risk loans without having adequate loan underwriting policies and practices to manage the risk."), and ¶¶ 36-38 (failing to address serious criticism of the Bank's lending and funding policies leveled in the 2006 ROE), and ¶¶ 61, 63, 64, 72, 76-79 (disregarding clear deficiencies in Credit Memos regarding various loans).  These same facts state a claim for an "unexcused pattern

_____

[2] The parties have not provided, and the court has not discovered, any California or federal interpretations of "reckless disregard" or "unexcused pattern of inattention."  These two exceptions to the statute allowing an exculpatory clause are exclusive to California and not found in the Delaware statute that served as a model or in comparable legislation of any other state. Marsh's Cal. Corp. Law, 4th Ed.§ 11-04 at 11-44.1.

of inattention that amounts to an abdication of duty."[3]

For these reasons, the court finds that the FDIC has pleaded sufficient facts to establish that the Exculpatory Clause may be bypassed under § 204.

### 3. Second Claim for Gross Negligence

In its second claim for relief, the FDIC seeks to hold the Director Defendants personally liable for money damages under Section 11(k) of the Federal Deposit Insurance Act, as amended by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(k).  FIRREA section 1821(k) makes directors and officers of banks liable for gross negligence. Under FIRREA, "state law sets the standard of conduct as long as the state standard (such as simple negligence) is stricter than that of the federal statute."  Atherton v. F.D.I.C., 519 U.S. 213, 216 (1997).  Even if the Exculpatory Clause applies, under FIRREA Director Defendants would be liable if they breached the applicable standard of care of gross negligence.  FDIC v. McSweeney, 976 F.2d 532, 539-40 ("Section 1821(k) preempts these state laws to the extent that they insulate officers and directors from liability for gross negligence, because such laws directly conflict with its

---

[3] Defendants assert that this requires a "total abdication" of duty, but the case they cite, Berg & Berg Enterprises, LLC v. Boyle, does not support that proposition.  The Berg court noted that "Berg suggests that it has pleaded total abdication by the directors of their corporate responsibilities" but found that "the mere fact of the assignment [an alternative to liquidation in bankruptcy] and the failure by the directors to pursue Berg's bankruptcy reorganization plan or some other unidentified alternative do not, as a matter of fact or law, establish abdication of duty."  Berg & Berg Enterprises, LLC v. Boyle, 178 Cal. App. 4th 1020, 1047 (2009).  In other words, the court did not require Berg to plead a "total abdication of duty;" it found instead that the facts pleaded by Berg did not amount to an abdication of duty, despite Berg's assertion to the contrary.

grant of authority."). "'Gross negligence' long has been defined in California and other jurisdictions as either a 'want of even scant care' or 'an extreme departure from the ordinary standard of conduct.'" <u>City of Santa Barbara v. Superior Court</u>, 41 Cal. 4th 747, 754 (2007)(citation omitted).

The FDIC summarizes its allegations of gross negligence as follows: "The Complaint contains allegations that . . . [Defendants] approved nine facially deficient loans that bore an unusually high risk of not being repaid, permitted loans to be made without proper analysis of the borrowers' ability to repay, failed to inform themselves about the risk posed by the loans prior to approval, approved loans with terms inconsistent with the Bank's Loan Policy, and failed to ensure the loans were underwritten in accordance with sound banking principles." (Opp. to Dir. Mot. at 21.)

The Director Defendants maintain that they acted with due care by "follow[ing] [the Bank's] established process in approving the nine loans at issue, which involved review of substantial information" and receiving Bank credit memoranda with "substantial information on which the Director Defendants based their approvals of the loans." (Dir. Mot. at 12-13.) They maintain that they did not have a "duty of inquiry" to independently verify every aspect of each loan. <u>See Castetter</u>, 184 F.3d at 1045. As a result, Director Defendants argue, the FDIC has failed to state a claim not only for gross negligence but for simple negligence.

California Corporations Code § 309 sets the standard of care for a director and states that "a director shall be entitled to rely on information, opinions, reports or statements [prepared by

certain parties] . . . so long as . . . the director acts in good faith, after reasonable inquiry when the need therefor is indicated by the circumstances and without knowledge that would cause such reliance to be unwarranted."  The FDIC argues that because the loans were facially deficient, the Directors had a duty to investigate.  The Director Defendants respond that the loans were not facially deficient and that some of the purported deficiencies are based in documents that the FDIC-R does not allege were in the possession of the Directors.  (Dir. Mot. at 16.)  They argue, further, that the allegations in the Complaint amount to merely "substantive disagreement" with the decision to issue the loans, rather than gross negligence in the process of making loans.

If the documents provided to the Director Defendants are as facially deficient as alleged in the Complaint, those documents would trigger a duty to investigate because reliance upon them would be unwarranted.  Such misplaced reliance would properly be considered as a failure of the Director Defendants' process of decisionmaking rather than the substance of the decisions.  "Courts give deference to directors' decisions reached by a proper process, and do not apply an objective reasonableness test in such a case to examine the wisdom of the decision itself."  Hill v. State Farm Mut. Auto. Ins. Co., 166 Cal. App. 4th 1438, 1493 (2008)(internal quotation marks, citations, and alterations omitted).  In Hill, the "plaintiffs offered expert testimony to the effect that the Board's decisions on dividends, rate reductions, and the surplus were wrong on the merits" and the court found that "plaintiffs did not make a showing that the Board's decisionmaking process was tainted by fraud, oppression, illegality, or a similar purpose."  Id. at 1494.

Instead, it "merely questions the decisions which the directors made. This is exactly the type of second-guessing which the business judgment rule was designed to preclude." Id. (internal quotation marks, citation, and alterations omitted).  Here, in contrast, the FDIC alleges not merely that the Director Defendants made unwise decisions, but that their process was flawed insofar as the alleged facial deficiencies in the loans did not trigger further investigation as they should have.  The FDIC also alleges that the loans were approved in violation of the Bank's Loan Policy, which further indicates that the allegations concern decisionmaking procedures rather than substance.

Director Defendants assert that the decision-making process alleged in the Complaint demonstrates at least "scant care" because FBBH  followed its established process in approving the loans at issue and involved reviewing substantial information.  They argue that the allegations do not rebut the "'prima facie showing of good faith and reasonable investigation [that] is established when a majority of the board is comprised of outside directors and the board' has received the advice of independent consultants." Castetter, 184 F.3d at 1045 (quoting Katz v. Chevron Corp., 22 Cal. App. 4th 1352, 1368-69 (1994)).  The court finds that, taken as true, the allegations that the Director Defendants approved and failed reasonably to investigate facially deficient loans in violation of FBBH's Loan Policy and sound banking principles are sufficient to rebut the presumption of good faith and reasonable investigation.

Director Defendants also argue that the FDIC has not pleaded a causal connection between the alleged deficiencies and violations

19

and the FDIC's losses.  The court disagrees.  The Complaint alleges that "[a]s a direct and proximate result of these Defendants' gross negligence, the FDIC suffered damages in an amount to be proven at trial, in excess of $100.6 million."  (Compl. ¶ 152.)

For these reasons, the court finds that, the FDIC has stated a claim for gross negligence.

### 4. Duplication of Claims

The Director Defendants assert that the third claim for relief (regarding breach of fiduciary duty) should be dismissed because it is "entirely duplicative" of the gross negligence claim.  (Dir. Mot. at 30.)  "Both claims are based on the approval of the same nine loans, the same losses allegedly resulting from the approval of those loans, and the same duty of care to the Bank."  (Id.)

Under the Federal Rules, "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  Fed. R. Civ. P. 8(d)(2).  This rule embodies a "liberal pleading policy."  Molsbergen v. U.S., 757 F.2d 1016, 1019 (9th Cir. 1985).

The Director Defendants cite Swartz v. KPMG, LLP in support of the proposition that duplicative claims that add nothing should be dismissed.  476 F.3d 756 (9th Cir. 2007).  There, the Ninth Circuit held that a claim seeking "a declaration of defendants' liability for damages sought for his other causes of action" was "merely duplicative."  Id. at 766.  In that case, however, the issue was not only the repetition of the same facts and same plea for damages, but rather the derivative nature of the cause of action,

which depends on the other causes of action to succeed at all.

Here, the claims regarding gross negligence and breach of fiduciary duty share the same underlying facts, but either could survive on its own.  Director Defendants have not established any prejudice to them, since the Complaint does not seek a double recovery.  To find that the FDIC must limit itself to one or the other would constrict the "liberal pleading policy" of Rule 8 which does not put any such limits on pleading in the alternative.

**D. Motion of Officer Defendants**

    **1. Whether the BJR Applies to Officer Defendants**

        **a. Choice of Law**

In determining the choice of law for actions against a corporation, California courts have used the "internal affairs doctrine." State Farm Mut. Auto. Ins. Co. v. Superior Court, 114 Cal. App. 4th 434, 434, 442-44, 446 (2003); Vaughn v. LJ Int'l Inc., 174 Cal. App. 4th 213, 223 (2009). "The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs." Edgar v. MITE Corp., 457 U.S. 624, 645 (1982). The Supreme Court has stated that courts normally "look to the State of a business' incorporation" to decide which law applies. Atherton v. FDIC, 519 U.S. 213, 224 (1997). Atherton further suggested that the state in which the "bank has its main office or maintains its principal place of business" can be used as the state of incorporation. Id. (citations omitted).

Here, First Bank of Beverly Hills ("FBBH") has been incorporated and has its principle place of business in California. (Request for Judicial Notice ("RJN"), Dkt. No. 36-1, Ex. A

21

("Articles of Incorporation").) FBBH is a wholly owned subsidiary of Beverly Hills Bancorp, Inc. ("Bancorp"). Bancorp is incorporated in Delaware. Defendant Officers argue that Bancorp and Bank are so intertwined that Delaware law should apply. (Reply at 4-5.) They point out that Bancorp provided financial and managerial strength for Bank and that several of Bank's officers and directors were shareholders of Bancorp. (<u>Id.</u>) Further, they argue that by Bancorp being incorporated in Delaware, Bancorp's shareholders expressly determined that Delaware laws would govern. (<u>Id.</u>)

The court rejects this line of reasoning. First, only FBBH, not Bancorp, is not a party to this action. Defendant Officers have cited no case where a court has applied the law from the state of a parent company's incorporation without that parent company being a party to the action. Second, FBBH selected California as its principal place of business. (RJN, Ex. A.) Its articles of incorporation indicate that California law governs areas such as liability and indemnification of agents. (<u>Id.</u>) Under the internal affairs doctrine, the court finds that California law applies. <u>See</u> <u>FDIC v. Van Dellen</u>, CV 10-4915 DSF (SHx), 2012 WL 4815159 (C.D. Cal. Oct. 5, 2012).

**b. Whether the business judgment rule Extends to Officers**

The Officer Defendants argue that even if California law applies, corporate officers are shielded from liability by the business judgment rule. Officer Defendants argue that the court should apply the common law business judgment rule to officers as well as directors. This claim is not supported by California law. <u>See, e.g.</u>, <u>Gaillard v. Natomas Co.</u>, 208 Cal. App. 3d 1250, 1265

22

(1989) (holding that because the directors were "acting as officer employees of the corporation . . . the business judgment rule therefore should not apply."); FDIC v. Van Dellen, 2012 WL 4815159, at *6 (holding that "California courts have not extended the rule to officers and this [c]ourt declines to do so.").[1] Biren, cited by Officer Defendants in support of the extension of the business judgment rule to officers, concerned a director-officer who was protected by the business judgment rule, but the court focused on her status as a director rather than her dual status as director-officer. See, e.g., Biren v. Equality Emergency Medical Group, 102 Cal. App. 4th 125, 138 (2002)("[Biren] was the director responsible for billing matters.  She believed it was her duty to promptly change billing companies to protect the corporation. The trial court could reasonably infer that she mistakenly believed it was in the best interest of the corporation that she act with alacrity because the other directors could not.")  The court adopts the reasoning of Judge Wright in FDIC v. Perry, CV-11-5561 ODW (MRWx), 2012 WL 589569 (C.D. Cal. 2012), which analyzes California court decisions, statutory language, and legislative history and comes to the conclusion that "[i]n light of the apparent lack of authority and the California legislature's expressed intent not to include corporate officers in codifying common law [business judgment rule], this Court holds that [the business judgment rule] does not

---

[1] Officer Defendants rely on Biren v. Equal. Emergency Med. Grp., 102 Cal. App. 4th 125 (2002), which held that the business judgment rule protected an officer-director acting in her capacity as the company's chief executive officer. (Off. Mot. at 13:3-5.) However, the Biren court's decision focuses on the protections afforded to Biren by the BJR based on her status as a director. "[T]he [business judgment] rule ... protect[s] well-meaning directors who are misinformed, misguided, and honestly mistaken." Id. at 137.

protect officers' corporate decisions."  Id. at *4.

### 2. Gross Negligence

In the alternative, the FDIC brings a claim for gross negligence under FIRREA § 1821(k) against the Officer Defendants. The court agrees, and the FDIC does not dispute, that the FDIC may bring either the negligence or the gross negligence claim against Officer Defendants, not both.  The Supreme Court held that state law provides the standard of liability for suits under FIRREA § 1821(k) when, as here, the state law standard is more rigorous than gross negligence.  See Atherton, 519 U.S. at 216 ("[S]tate law sets the standard of conduct as long as the state standard (such as simple negligence) is stricter than that of the federal statute. The federal statute nonetheless sets a 'gross negligence' floor, which applies as a substitute for state standards that are more relaxed.").  Since under state law the Officer Defendants are not shielded by the business judgment rule, they are subject to liability under FIRREA on a simple negligence theory. They cannot also be subject to liability under FIRREA on a gross negligence theory when a stricter state standard applies.

### 3. Breach of Fiduciary Duty

The Officer Defendants next argue that the court should strike the breach of fiduciary duty claim because it is entirely duplicative of the simple negligence claim.  This argument is identical to the one made by the Director Defendants, and the court rejects it for the same reasons.  Liberal pleading standards mean that plaintiffs must be allowed to plead their claims in the alternative.

///

**E. Motion of Defendant Faigin**

Defendant Faigin joins the Motions of both the Director Defendants and the Officer Defendants.  The court's conclusions with respect to those Motions apply equally to Defendant Faigin's Motion.

**F. Motion of Defendant Lannan**

Defendant Lannan was a director of the Bank from 2003 to 2008. Eric Rosa, employed by China Trust Bank at the time, referred the CTB loans to Lannan.  (Compl. ¶¶ 52, 53, 58.)  Lannan voted to approve these loans, and all of the nine loans at issue.  (Compl. ¶¶ 29, 57.)  The Complaint alleges that he received a referral fee of $75,000 for the four CTB participation loans.  (Compl. ¶ 9.) When regulators learned that Lannan had voted to approve the CTB participation loans while receiving a referral fee, they required the Board to ratify the purchase without Lannan.  Defendants Faigin, Amster, Glennon, Kanner, King, and Kellogg voted in favor of ratification a year after the original approval.  (Compl. ¶ 58.)

Lannan joins the Outside Director Defendants' Motion. Additionally, he moves to dismiss the first claim for relief which alleges that he was negligent in voting on loans from the China Trust Bank and then receiving a referral fee of $75,000.  Whereas the other directors are protected by the business judgment rule for negligence, the FDIC alleges that Lannan had a conflict of interest and therefore is not protected by the business judgment rule. Lannan asserts that his vote was consistent with California Corporations Code § 310 and is therefore protected by the business judgment rule of § 309.  He also asserts that the third claim for relief for breach of fiduciary duty should be dismissed.

California Corporations Code § 309 codifies a director's standard of care.  Under that rule, a contract is not "void or voidable" because a director has a "material financial interest" in the transaction if the following conditions are met:

> (1) The material facts as to the transaction and as to
> such director's interest are fully disclosed or known to
> the shareholders and such contract or transaction is
> approved by the shareholders (Section 153) in good faith,
> with the shares owned by the interested director or
> directors not being entitled to vote thereon, or
>
> (2) The material facts as to the transaction and as to
> such director's interest are fully disclosed or known to
> the board or committee, and the board or committee
> authorizes, approves or ratifies the contract or
> transaction in good faith by a vote sufficient without
> counting the vote of the interested director or directors
> and the contract or transaction is just and reasonable as
> to the corporation at the time it is authorized, approved
> or ratified, or
>
> (3) As to contracts or transactions not approved as
> provided in paragraph (1) or (2) of this subdivision, the
> person asserting the validity of the contract or
> transaction sustains the burden of proving that the
> contract or transaction was just and reasonable as to the
> corporation at the time it was authorized, approved or
> ratified.

Cal. Corp. Code § 310.

Under § 309, a director is protected by the business judgment rule when he or she performs the duties of a director "in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances."  Cal. Corp. Code § 309.  Under California law, "a director is not liable for a mistake in business judgment which is made in good faith and in what he or she believes to be the best interests of the corporation, where no conflict of interest exists." Gaillard, 208 Cal.App.3d at 1263 (1989). "The business judgment rule does not shield actions taken without reasonable inquiry, with improper motives, or as a result of a conflict of interest." Kruss v. Booth, 185 Cal.App.4th at 728 (2010).

The FDIC argues that it is undisputed that a conflict of interest exists, since Lannan does not deny that he referred the four loans and received a fee for them.  Lannan contends that because he complied with § 310 and because the referral fee was not improper, the prospect and receipt of "a referral fee for these loans did not impose any legally independent obligations on him to investigate these loans or refrain from voting on them."  (Lannan Mot. at 10.)  He claims the same protections of the business judgment rule as the other Director Defendants.  The FDIC counters that his compliance with § 310 means only that the contract is not voidable, not that he did not have a conflict of interest.

In other words, the parties dispute whether compliance with § 310 annuls what would otherwise be a conflict of interest under § 309.  The court finds that as a matter of policy a director with a

personal interest in the transaction should not benefit from the business judgment rule.  The aim of the business judgment rule is to protect disinterested directors making their best efforts at business decisions.  When a director has a personal stake in the transaction, even if it is allowed because of his compliance with § 310, he is nonetheless not a disinterested director in the case of that particular transaction.  Section 310 neutralizes the effects of a conflict of interest so as to create a valid contract, but it does not neutralize a conflict of interest for all purposes.  "The satisfaction of section 310's requirements . . . does not render such contract immune from attack on other grounds, such as corporate waste, and does not render the directors immune from liability for breach of fiduciary duty as a result of their approval of such contract."  <u>Gaillard</u>, 208 Cal.App.3d at 1273.  For these reasons, the court finds that Lannan's compliance with § 310 does not result in the protection of the business judgment rule under § 309.

The court DENIES Lannan's Motion.

**IV. Conclusion**

For the reasons stated above, the court DENIES all of the Motions to Dismiss.

IT IS SO ORDERED.

Dated: July 8, 2013

DEAN D. PREGERSON

United States District Judge

28